A. B. CABANISS and WILSON HEMINGWAY, Appellants, v. R. A. CLARK, Adm'r, &c., Appellee.

1. PARTNERS: LIEN.—If one of several co-partners purchase a slave in his own name, and with his own means, except about one-sixth of the price, which was paid out of the partnership funds, and permit the slave to be used about the firm business, and under their management and control, without any charge against the firm therefor, the slave will not be regarded as the property of the co-partnership, nor would the other co-partner have a lien on the slave for the repayment of the firm assets used in the purchase, if it appear that the several co-partners were in the habit of applying the partnership assets to their own separate use, without objection.

2. ADMINISTRATOR: SALE.—If the administrator expressly sell only the title and

interest of his intestate to personal property, the purchaser will not be discharged from the payment of the purchase-money, if it afterwards appear that the intestate's title was not good.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

A statement of the case will be found in the opinion of the court.

*D. C. Glenn*, for Hemingway.

*T. J. Wharton* and *A. Burnell*, for Cabaniss.

*Geo. L. Potter*, for appellee.

*R. A. Clark*, in *propria persona*.

HANDY, J., delivered the opinion of the court.

The substance of this case appears to be, that Cabaniss and Gist were co-partners in the practice of medicine, and whilst that relation existed, Gist purchased a slave, in his own name, and without the privity of Cabaniss, for the sum of $600, of which he paid $500 out of his own means, and $100 by means of an account due the firm, but without the knowledge of Cabaniss, and took the title in his own name, and took possession of the slave, and held and controlled him as his individual property. Each of the partners was in the habit of using the firm means for their individual account. After the purchase, the slave waited upon the office of Cabaniss & Gist, and was ordered and controlled, while there, by both partners, and was, during the time, put to board by Cabaniss. Gist was considerably indebted on partnership account to Cabaniss; but Cabaniss does not appear to have claimed, during the lifetime of Gist, that the slave was purchased as partnership property, nor does Gist appear to have so considered him. The slave remained in the possession and under the control of Gist until his death, after which he was sold by Clark, as his administrator, at public sale, under an order of the Probate Court, and purchased by Hemingway, who received a bill of sale from the administrator,

conveying the right, title, and interest of Gist in and to the slave, it being understood at the sale, that only such title was sold. Hemingway executed his note to the administrator for the purchase-money; which being unpaid, suit was brought upon it, and thereupon Hemingway filed this bill, alleging that there is a dispute as to whether the slave is the property of Gist's administrator, or of Cabaniss, his surviving partner, and praying that the parties may interplead as to the title to the slave, so that he may be protected in his purchase, the money being paid into court; and praying an injunction. It further appears that Gist's estate is insolvent.

The chancellor, on final hearing, dismissed the .bill, and the cross-bill of Cabaniss; and from that decree Hemingway and Cabaniss have taken this appeal.

In any view that can be taken of the case, the decree is manifestly correct.

1. The proof shows that Hemingway purchased only the right and title of Gist to the slave, and hence, if that interest were only that of a partner in the slave, it would be no sufficient ground for his being discharged from the payment of his note to the administrator.

2. It plainly appears that the slave was the individual property of Gist. The purchase was made on his own account, and in his own name, with possession delivered to him, and so continuing during his life, without the knowledge or consent of Cabaniss, no title being legally asserted by Cabaniss during Gist's life, nor, for aught that appears, until this bill was filed, suggesting that Cabaniss was entitled to the slave. The circumstance that the slave was permitted by Gist to wait upon the office, is not irreconcilable with his being the individual property of Gist. Nor is the fact that he was put to board by the directions of Cabaniss a part of the time after the purchase, and that he was in the habit of ordering and controlling him about the office, sufficient to show that he was the property of the firm, against the evidence showing individual property in Gist. For it appears that the slave's board was paid for by his services in waiting on the table where he boarded; and although that arrangement was made by Cabaniss, it was made

with a family relative, and therefore quite naturally made by him, and it was one that might have been made consistently with the fact that the slave was Gist's property. The control exercised by Cabaniss over the slave, does not appear to be more than would be exercised by him over a servant of Gist's, employed by him about his person, and in his office, in attending to matters necessary in such service.

It is said, that the fact that Gist made no charge against the firm for his services, tends to show that he was partnership property. But the fact that he made no charge against the firm for the difference between $500 paid by his own means, and $100 of the means of the firm, used by him in making the purchase, is much more forcible to show that he did not make the purchase on account of the firm, especially when it is considered that he was considerably in arrears to the firm.

Upon the whole, the evidence shows merely a case where one partner has used the means of the firm for a small part of the purchase-money of property bought in his own name, and on his own account, but which he permitted to be used in part, in the service and for the convenience of the firm; and it is clear, that, under such circumstances, the property would not belong to the firm, nor would the other partner have a lien upon it for the money of the firm used in the purchase; but the purchaser would be merely chargeable in an account between the partners, for so much money of the firm applied to his individual use.

The decree is affirmed, and the injunction dissolved.

SMITH, C. J., gave no opinion.